```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------X
UNITED STATES OF AMERICA
                                        MEMORANDUM & ORDER
        -against-                       15-CR-0457(JS)

TEDDY SANTANA,

                Defendant.
----------------------------------X
APPEARANCES
For United States:  Charles N. Rose, Esq.
                    United States Attorney's Office
                    610 Federal Plaza
                    Central Islip, New York 11722

For Defendant:      Teddy Santana, pro se
                    68955-053
                    Edgefield Federal Correctional Institution
                    P.O. Box 725
                    Edgefield, South Carolina 29824
```

SEYBERT, District Judge:

Defendant Teddy Santana ("Defendant") seeks a reduction of his sentence pursuant to the First Step Act, 18 U.S.C. § 3582(c)(1)(A)(i), in light of health concerns surrounding the COVID-19 pandemic and his underlying medical conditions. (Mot., ECF No. 102; Reply, ECF No. 109; see also Feb. 9, 2021 Ltr., ECF No. 108; Feb. 22, 2021 Ltr., ECF No. 110; Mar. 1, 2021 Ltr., ECF No. 111.[1]) The Government opposes the motion. (Gov't Opp., ECF No. 104.) For the reasons set forth below, the motion is DENIED.

---

[1] The Court references Defendant's letters according to the dates they were filed on the docket, not the dates they were signed by Defendant.

1

BACKGROUND

Defendant was arrested on May 12, 2014 and charged in a two-count superseding indictment with conspiracy to distribute heroin and possession with intent to distribute heroin in violation of 21 U.S.C. §§ 846, 841(a)(1), 841(b)(1)(B)(iii), and 851(a). (See Superseding Indictment, ECF No. 9; Presentence Investigation Report ("PSR"), ECF No. 67, ¶¶ 2-3.) A jury convicted Defendant on both counts after a two-week trial. (May 12, 2016 Jury Verdict.) Given his prior convictions, Defendant qualified as a "career offender" for sentencing purposes. (PSR ¶ 8; id. ¶¶ 21-54 (summarizing Defendant's criminal history).) As a result, the U.S. Probation Department calculated his advisory Guidelines range at 262 to 327 months' incarceration. (Id. ¶ 75; U.S. Probation Dep't Sentence Recommendation, ECF No. 67-1, at 1.) On February 3, 2017, this Court sentenced Defendant to a term of imprisonment of 180 months, followed by five years of supervised release. (Sent'g J., ECF No. 80.) When explaining the variance, this Court noted Defendant's history of drug dependence, but added "[t]he defendant displayed a total lack of remorse and perjured himself at the trial. He continues to blame everyone else. He is a life-long distributor of illegal drugs at street-level quantities." (Stmt. of Reasons, ECF No. 81 (under seal), at 3.)

Defendant is fifty-two years old. He is currently serving his sentence at Federal Correctional Institution ("FCI")

Edgefield and is projected to be released on August 23, 2027. See Find an Inmate, BOP, https://www.bop.gov/inmateloc/index.jsp (last visited May 11, 2021). According to records maintained by the Bureau of Prisons ("BOP"), while incarcerated Defendant has been sanctioned on four separate occasions for misbehavior. (BOP Disciplinary Recs., Gov't Opp., Ex. A, ECF No. 105.) Defendant represents in his motion that he has availed himself of "numerous adult education classes" offered at his facilities. (Mot. at 6.)

As relevant to his motion, Defendant's medical records reveal that he has a history of asthma, hypertension, and hyperlipidemia. (See BOP Medical Recs., Gov't Opp., Ex. D, ECF No. 105-3, at ECF pp. 5, 20-21.) In a supplemental letter, Defendant informed the Court that he has been diagnosed with obesity. (See Mar. 1, 2021 Ltr.) According to BOP medical records, he is receiving a course of treatment for these conditions, which appear to be well-managed. (See BOP Medical Recs. at ECF pp. 32-33 (describing course of treatment for asthma); id. at ECF pp. 51, 54 (asthma "adequately controlled with prn Albuterol alone"); id. at ECF p. 20 (regarding hypertension, Defendant reports "compliancy with medication and no complaints"); id. at ECF pp. 51, 54 (hypertension "[w]ell-controlled with HCTZ," which is used to treat high blood pressure).) Defendant's primary medical issues for the past year appear to relate to pain from a

1993 gunshot wound to his face and a benign growing lipoma on his back. (Id. at ECF pp. 2-19.)

In his motion, Defendant represents that, if released, he plans to relocate to Atlanta, Georgia to be the primary caregiver for his sister, who recently underwent brain surgery for an aneurysm and allegedly has no one to care for her. (Mot. at 6.)

## DISCUSSION

I.  Legal Standard

"A court may not modify a term of imprisonment once it has been imposed except pursuant to statute." United States v. Rabuffo, No. 16-CR-0148, 2020 WL 2523053, at *1 (E.D.N.Y. May 14, 2020) (quoting United States v. Gotti, 433 F. Supp. 3d 613, 614 (S.D.N.Y. 2020)). The First Step Act, which modified 18 U.S.C. § 3582(c), allows a court to modify a defendant's sentence upon a motion of either (i) the Director of the BOP, or (ii) the defendant "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A).

Under the statute, courts have discretion to grant compassionate release when (1) there are "extraordinary and compelling reasons" that warrant a sentence reduction, (2) the

sentence reduction is "consistent with applicable policy statements issued by the Sentencing Commission," and (3) the sentence reduction "is supported by the factors set forth in 18 U.S.C. § 3553(a)." United States v. Canales, No. 16-CR-0212, 2020 WL 2319294, at *2 (S.D.N.Y. May 9, 2020) (quoting 18 U.S.C. § 3582(c)(1)(A)(i)).

District courts may consider "the full slate of extraordinary and compelling reasons that an imprisoned person might bring before them in motions for compassionate release." United States v. Brooker, 976 F.3d 228, 237 (2d. Cir. 2020); see id. at 236 (finding that "[b]ecause Guideline § 1B1.13 is not 'applicable' to compassionate release motions brought by defendants [as compared to those brought by the BOP], Application Note 1(D) cannot constrain district courts' discretion to consider whether any reasons are extraordinary and compelling"). "The only statutory limit on what a court may consider to be extraordinary and compelling is that '[r]ehabilitation . . . alone shall not be considered an extraordinary and compelling reason.'" Id. at 237-38 (emphasis and alteration in original) (quoting 28 U.S.C. § 994(t)).

Even where extraordinary and compelling reasons exist, the Court must "consider all the Section 3553(a) factors to the extent they are applicable, and may deny such a motion if, in its discretion, compassionate release is not warranted because Section

3553(a) factors override, in any particular case, what would otherwise be extraordinary and compelling circumstances." United States v. Davies, No. 17-CR-0057, 2020 WL 2307650, at *2 (E.D.N.Y. May 8, 2020) (citation omitted). A defendant "bears the burden of showing that his release is justified." United States v. Patterson, No. 06-CR-0080, 2020 WL 3451542, at *1 (S.D.N.Y. June 23, 2020).

II. Analysis

Defendant submitted his request for compassionate release to the BOP on August 31, 2020. (Response to Inmate Request to Staff Member, Mot., Ex. A.) On October 29, 2020, the BOP denied Defendant's request. (Id.) Although it is unclear from Defendant's submission whether he appealed the BOP's denial of his request, the Court "need not wade into the exhaustion question because more than 30 days have lapsed since the warden . . . received [Defendant's] petition for compassionate release," United States v. Genovese, No. 18-CR-0183, 2020 WL 4004164, at *2 (S.D.N.Y. July 15, 2020) (citations omitted). In any event, the Government "does not object to the Court's exercise of jurisdiction to adjudicate the present motion on the merits." (Gov't Opp. at 3-4 n.3.) The Court thus turns to the merits.

A. Extraordinary and Compelling Reasons

Defendant argues health concerns surrounding the COVID-19 pandemic and his underlying medical conditions, namely,

6

hypertension, asthma, hyperlipidemia, and obesity[2] are "extraordinary and compelling" reasons that justify his release. (Mot. at 2, 5; see also Mar. 1, 2021 Ltr. (updating the Court regarding obesity diagnosis).) Defendant does not address the Section 3553(a) factors specifically, but he does assert that he is "not a danger to the community, nor to myself," and that he "feel[s] remorse for [the] actions that landed [him] in prison." (Id. at 6; see also Feb. 22, 2021 Ltr. at ECF p. 4.) The Government opposes the motion and argues that Defendant cannot demonstrate extraordinary and compelling reasons warrant his release, because the BOP has taken measures at Defendant's facility to prevent the spread of COVID-19, Defendant's medical conditions are well controlled, and in any event, the Section 3553(a) factors weigh against his release. (See Gov't Opp. at 4-5.)

This Court and others have recognized that an inmate's especially heightened risk of infection and risk of developing severe complications from COVID-19 based on the defendant's specific medical history may constitute "extraordinary and compelling" reasons to grant compassionate release, often in combination with other factors. United States v. Phillip, No. 14-

---

[2] Defendant asserts that his "chronic sinusitis" is another condition that "puts him in imminent danger should he contract the coronavirus." (Mot. at 5.) He provides no support for the assertion, and after an independent review of the record, the Court is unable to find a basis for the contention.

7

CR-0264, 2020 WL 5633100, at *3 (E.D.N.Y. Sept. 21, 2020) (Seybert, J.) (collecting cases); United States v. Vega, No. 89-CR-0229, 2020 WL 7060153, at *3 (E.D.N.Y. Dec. 2, 2020) (Seybert, J.); United States v. Evans, No. 18-CR-0022, 2020 WL 6747881, at *3 (D. Conn. Nov. 17, 2020). Courts considering a defendant's medical vulnerability from COVID-19 ordinarily look to the Centers for Disease Control and Prevention's ("CDC") guidance on at-risk health populations. See Vega, 2020 WL 7060153, at *3; United States v. Barajas, No. 18-CR-0736, 2020 WL 3976991, at *9 (S.D.N.Y July 13, 2020); Evans, 2020 WL 6747881, at *3 (collecting cases). Where, as here, a defendant argues that medical vulnerability to COVID-19 constitutes "extraordinary and compelling reasons" justifying compassionate release, courts have engaged in a fact-intensive inquiry that considers the following non-exhaustive factors: the defendant's age; the severity and documented history of the defendant's health conditions; defendant's history of managing those conditions in prison; the proliferation and status of infection at defendant's facilities; and the proportion of the term of incarceration that has been served. United States v. Gibson, No. 17-CR-6571, 2020 WL 7343802, at *3 (E.D.N.Y. Dec. 14, 2020) (Seybert, J.) (citing United States v. Brady, No. 18-CR-0316, 2020 WL 2512100, at *3 (S.D.N.Y. May 15, 2020) (internal citations omitted)).

At age fifty-two, Defendant is in an age group that faces neither the lowest risk nor the greatest risk of severe illness from COVID-19 infection. See Older Adults, Coronavirus Disease 2019 (COVID-19), CDC, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/older-adults.html (last updated May 14, 2021). This cuts against release. Other courts in this Circuit, following CDC guidance, have expressed similar views regarding petitioners in Defendant's age bracket. See, e.g., United States v. Norville, No. 10-CR-1046, 2021 WL 1731778, at *2 (S.D.N.Y. May 3, 2021) ("[Defendant], at forty-nine-years old, is relatively young, which further reduces his risk."); United States v. Garcia, No. 09-CR-0330, 2021 WL 1616914, at *4 (E.D.N.Y. Apr. 26, 2021) ("[A]t age 62, Mr. Garcia does not fall within the age group identified by the CDC as being the most at risk (65 years and older)."); United States v. Ortega, No. 02-CR-0348, 2021 WL 1535417, at *2 (S.D.N.Y. Apr. 19, 2021) (same for fifty-three-year old); United States v. Piña, No. 01-CR-0619, 2021 WL 364192, at *2 (S.D.N.Y. Feb. 3, 2021) (same for fifty-one-year old); United States v. Mitchell, No. 96-CR-0126, 2021 WL 1400053, at *4 (S.D.N.Y. Apr. 14, 2021) (same for fifty-year old).

However, Defendant has been diagnosed as obese, receives treatment for hypertension and asthma, and suffers from unspecified hyperlipidemia. These are conditions that, according to the CDC, are known to correlate or might correlate to an

9

increased risk of severe complications from contracting COVID-19. People with Certain Medical Conditions, CDC, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last updated May 13, 2021). Nevertheless, there is no indication in Defendant's BOP Medical Records that his health conditions are not well controlled; indeed, the opposite is true, and the evidence shows the BOP has provided him with an adequate course of treatment throughout his detention. See Gibson, 2020 WL 7343802, at *4; see also United States v. Sanchez, No. 08-CR-0789, 2020 WL 4742916, at *2 (S.D.N.Y. June 17, 2020) (denying compassionate release where "nothing in the record suggests that [Defendant] has been 'unable to care for himself' or that he has 'been neglected by [prison] medical personnel.'") (collecting cases); United States v. Figueroa, No. 04-CR-0515, 2020 WL 6873433, at *4 (E.D.N.Y. Nov. 23, 2020) (denying compassionate release where the defendant did "not suggest that he has been unable to manage any medical condition he may have, or that the BOP has neglected his care") (collecting cases); United States v. Mood, No. 19-CR-0113, 2020 WL 3256333, at *1 (S.D.N.Y. June 16, 2020) (denying release to fifty-three-year old with diabetes, hypertension, and obesity where "[t]here is no question that [the defendant] has health issues, but his condition is stable and has been effectively managed by routine monitoring and medication"); Piña, 2021 WL 364192, at *2.

Moreover, conditions at FCI Edgewood are stable. According to the BOP's records, as of the date of this Order, there are no inmate or staff positive COVID-19 cases at the facility. See COVID-19 Cases, BOP, http://www.bop.gov/coronavirus/ (last updated May 18, 2021). "Although the court recognizes the notable hardships the COVID-19 pandemic has had on prison populations, the court notes that the BOP has taken measures to counter the spread of COVID-19 in the prison population" at FCI Edgefield and, as noted supra, to ensure Defendant receives adequate care for his medical conditions. Garcia, 2021 WL 1616914, at *5 (denying compassionate release request from defendant incarcerated at a facility with no active cases); United States v. Lewis, No. 10-CR-0392, 2021 WL 1873154, at *2 (S.D.N.Y. May 10, 2021) (same). In any event, this Court and others have concluded that "the mere possibility that an inmate with medical issues may contract Covid-19 is not necessarily an extraordinary and compelling reason" warranting release. Gibson, 2020 WL 7343802, at *4 (quoting United States v. Sturgis, No. 10-CR-6022, 2020 WL 7063359, at *5 (W.D.N.Y. Nov. 24, 2020)).

Accordingly, the Court finds that Defendant has not established "extraordinary and compelling reasons" to modify his sentence. 18 U.S.C. § 3582(c)(1)(A)(i).

B.  The 3553(a) Factors

Even if the Court believed Defendant had established "extraordinary and compelling" reasons to modify his sentence, the Section 3553(a) factors weigh against his release. Although Defendant pleaded guilty to a nonviolent crime, as this Court noted at sentencing, "[t]he defendant displayed a total lack of remorse and perjured himself at the trial. He continues to blame everyone else. He is a life-long distributor of illegal drugs at street-level quantities." Even crediting Defendant's expression of remorse, "there is a strong need for [him] to serve the sentence that was imposed." United States v. Graham, No. 16-CR-0786, 2020 WL 5604050, at *3 (S.D.N.Y. Sept. 17, 2020).

Last, Defendant has more than 75 months remaining on his 180-month sentence. This Court already sentenced Defendant eighty-two months below the bottom of the advisory Guidelines. As such, granting Defendant's request for compassionate release, "when he is more than a year away from completing his carceral term, would disserve these important § 3553(a) factors." United States v. Martinez, No. 12-CR-0862, 2020 WL 2079542, at *3 (S.D.N.Y. Apr. 30, 2020); United States v. Knight, No. 17-CR-0335, 2020 WL 4751490, at *2 (S.D.N.Y. Aug. 17, 2020) ("Though Defendant has served more than 70% of his anticipated term of imprisonment, considering his expected good time credit, his crime is serious and warrants him serving his full term of imprisonment.").

CONCLUSION

For the reasons stated herein, Defendant's motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) (ECF No.102) is DENIED.

SO ORDERED.

/s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

Dated: May __19__, 2021
      Central Islip, New York