UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------X
TEDDY SANTANA,

                    Petitioner,

                                        MEMORANDUM AND ORDER
          -against-                     15-CR-0457 (JS)

                                                    **FILED**
UNITED STATES OF AMERICA,                           **CLERK**

                                        4:02 pm, May 13, 2022
                    Respondent.
                                        **U.S. DISTRICT COURT**
----------------------------------X     **EASTERN DISTRICT OF NEW YORK**
APPEARANCES                             **LONG ISLAND OFFICE**
For Petitioner:     Teddy Santana, Pro Se
                    #68955-053
                    Edgefield Federal Correctional Institution
                    P.O. Box 725
                    Edgefield, South Carolina  29824

For Respondent:     Michael Maffei
                    United States Attorney's Office
                    Eastern District of New York
                    610 Federal Plaza
                    Central Islip, New York  11201


SEYBERT, District Judge:

        Teddy  Santana  ("Petitioner"),  appearing  pro se,

petitions  this  Court  to  vacate,  set  aside,  or  correct  his

conviction and sentence pursuant to 28 U.S.C. § 2255 (hereafter,

the "Petition").  (See Petition, ECF No. 91.)  Petitioner alleges

numerous constitutional violations and that his trial counsel was

ineffective due to various failures.  For the following reasons,

the Petition is DENIED.

<u>BACKGROUND</u>

I.    <u>The Underlying Crimes</u>[1]

On May 3, 2014, Kimberley Cooleen ("Cooleen") died as a result of a heroin overdose.  (Tr. 426:18-427:9.)  Nassau County Police Department's ("NCPD") Narcotic Vice Squad responded to Cooleen's home to investigate the circumstances of her death; as part of their investigation, detectives, including Detective Vincent Borgia ("Borgia"), attempted to ascertain who had supplied Cooleen with heroin.  (Tr. 428:10-22.)  After speaking with the family and obtaining consent to review the contents of Cooleen's cell phone, Borgia identified a phone contact, listed as "Eez", as an individual who had been supplying Cooleen with heroin.  (Tr. 428:13-429:3.)

On May 12, 2014, pretending to be Cooleen, Borgia used Cooleen's cell phone to contact "Eez" and arrange a meeting with "Eez".  (Tr. 430:5-22, 442:5-445:20.)  The following text message exchange ensued:

> BORGIA:   Hey what's up my phone is broken. Let me know if you get this.  Just got home
>
> EEZ:      Yes

---

[1]  The Court assumes the parties' familiarity with the facts of this case.  For the reader's convenience, it provides this factual background, which is drawn from the Superseding Indictment (ECF No. 9), the Presentence Investigation Report ("PSR") (ECF No. 67), Petitioner's suppression hearing held on April 21, 2016 through April 28, 2016, and Petitioner's criminal trial before this Court beginning on May 3, 2016 and concluding on May 12, 2016.

BORGIA:    Can't hear anything on phone gotta get a new one.  Can I see you in a little?

EEZ:    On my way

BORGIA:    I'm trying to get a ride.  My bike is locked in garage, will be home in a little while

BORGIA:    A whole bun

BORGIA:    How much can you do it for im a little short

EEZ:    On my way to u

BORGIA:    Not there yet.  Don't want you waiting

BORGIA:    My mom is bitchin

BORGIA:    Did you get my texts?

EEZ:    Yes

BORGIA:    Is 90 good please?

EEZ:    On my way

BORGIA:    Go to parking lot up by my house, I'll come down when you're in there.  My mom is being a pain.

EEZ:    I'm here

(Tr. 442:5-445:20.)  With his partner who was similar in appearance to Cooleen, Borgia drove an unmarked police car into the parking lot referenced in the text exchange.  (Supp. Hr'g Tr. 11:19-22.) Petitioner nodded towards Borgia's partner sitting in the passenger's seat, exited his vehicle, and walked towards the

3

passenger side of the unmarked car.  Thereafter, Borgia arrested Petitioner and seized Petitioner's cell phone from his hand, which was lit and opened to the text message exchange that Borgia had just had from Cooleen's cell phone. (Supp. Hr'g Tr. 14:1-16; Tr. 447:10-25.)

At the precinct, Petitioner was searched; eighteen glassines and two foil wrapped paper folds containing heroin were recovered from Petitioner's underwear. (Tr. 449:11-450:12.) Borgia secured Petitioner's cell phone but allowed Petitioner to use it to place two calls to his boss from his holding cell. (Tr. 630:23-631:20.)  Petitioner did not enter a passcode to use the cell phone. After Petitioner completed the calls, Borgia returned the cell phone to an evidence locker. (Supp. Hr'g Tr. 17:19-19:17.)  Later and pursuant to a search warrant, Borgia searched Petitioner's cell phone.

On May 13, 2014, Petitioner was charged and arraigned in state court on charges of Criminal Possession of a Controlled Substance in the Third Degree and Criminal Sale of a Controlled Substance in the Third Degree; he was later indicted by a state grand jury. On December 10, 2014, December 12, 2014, and January 8, 2015, a suppression hearing was held before the state court on Petitioner's motion to suppress the heroin and the contents of his cell phone. (See State Supp. Hr'g Order, ECF No. 26-1.)  The state

court denied Petitioner's motion to suppress finding sufficient probable cause for Petitioner's arrest. (Id.)

On September 9, 2015, Petitioner was indicted by a federal grand jury, and on October 14, 2015, he was charged in a two-count Superseding Indictment with conspiracy to distribute heroin and possession with intent to distribute heroin in violation of 21 U.S.C. §§ 846, 841(a)(1), 841(b)(1)(B)(iii), and 851(a). (Superseding Indictment, ECF No. 9.) After the federal Superseding Indictment was filed, on or about January 12, 2016, the Nassau County state court dismissed Petitioner's state prosecution.

A jury trial commenced before this Court on May 3, 2016.[2] One of Petitioner's co-conspirators, Denise Burke ("Burke"), testified pursuant to a non-prosecution agreement that: she received heroin from Petitioner almost daily from May 4, 2014 through his arrest on May 12, 2014; when she first met Petitioner, he sold her heroin (Tr. 790:21-791:3); between May 4, 2014 and May 12, 2014, she conspired with Petitioner to distribute heroin (Tr 829:3-16) Petitioner would package heroin in both small plastic bags, or glassines, and in foil (Tr. 822:1-4, 825:3-14, 834:4-23);

---

[2]   Prior to the May 2016 commencement of trial, the Court denied Petitioner's motion to suppress (hereafter, the "Suppression Motion") (ECF No. 24) filed in this action (see ECF No. 35 (hereafter, the "Suppression Order")), and denied Petitioner's Motion for Reconsideration of the Suppression Order (see Motion for Reconsideration, ECF No. 37; Minute Entry, ECF No. 41 (re: oral ruling denying Motion for Reconsideration).

the term "buns" referred to an amount of heroin, i.e., there were ten small bags in a bun (Tr. 830:11-16).

Further, text messages recovered from Petitioner's cell phone was introduced into evidence to demonstrate his heroin distribution operation.  For example:  On April 24, 2014, text messages from Petitioner's cell phone showed him texting someone, "I'm not the free dope man.  Take Y 100 and beat it." (Tr. 994:14-17.)  A couple days later, Petitioner texted, "Four cookies and I got you in a few.  I'm putting it together now.  Shit good." (Tr. 995:20-25.)  Petitioner also exchanged text messages with a co-conspirator named Poncho regarding dealing heroin, including a text from Poncho stating, "Yo, E, get the two buns because we have to go meet the white girl by the court on main street." (Tr. 996:20-997:4.)  Poncho also provided Cooleen's number to Petitioner, which number was saved in Petitioner's phone as "Oceanside".  (Tr. 999:2-19.)

Petitioner presented a defense case.  After the prosecution rested, Petitioner called members of Coolen's family, to wit, Elizabeth and Christine Cooleen, to refute Borgia's testimony that Elizabeth and Christine had provided Borgia with a physical description of Petitioner.  (Tr. 1021:20-1022:1, 1023:4-9.)  However, Christine Cooleen testified that she informed Borgia about individuals in her sister's cell phone who may be heroin dealers.  (Tr. 1026:25-1027:12.)

On May 12, 2016, a jury convicted Petitioner on both counts of the Superseding Indictment, i.e., conspiracy to distribute heroin and attempted distribution and possession with intent to distribute heroin. On February 3, 2017, Petitioner was sentenced to a term of 180 months' imprisonment, followed by five years' supervised release; judgment on Petitioner's conviction entered the same day. (Judgment, ECF No. 80.)

II. Procedural History

On July 15, 2016, Petitioner filed a motion for a new trial pursuant to Rule 33 of the Federal Rules of Criminal Procedure (hereafter, the "Rule 33 Motion"). (See ECF No. 62.) Petitioner argued that since Borgia perjured himself at all stages of the prosecution, his entire testimony should be disregarded; therefore, a new trial should be granted on the grounds that the evidence seized from Petitioner was inadmissible. (See id. at 3-12.) The Court denied Petitioner's Rule 33 Motion finding that "[e]ven if this was perjurious from the very beginning, the fact that there were responses from [Petitioner]'s phone in response to those texts that were made by Detective Borgia, clearly sets out the probable cause here. The lack of a perfect description doesn't cause this Court to think that the jury would have come in with any different result." (Sept. 23, 2016 Tr., ECF No. 73, 12:25-13:6.)

On February 16, 2017, Petitioner appealed his conviction and sentence to the Second Circuit Court of Appeals, arguing that this Court erred in denying his Suppression Motion and his Rule 33 Motion.   He asserted that because Borgia's testimony was not credible, this Court's probable cause determination was erroneous. The Second Circuit affirmed the Court's judgment.   See United States v. Santana, 717 F. App'x 89 (2018).   It held this Court's probable cause finding was correct, "both when initially made and after the close of the trial," stating "[c]onsidering the totality of the circumstances, the facts provide[d] probable cause to arrest, regardless of whether there were minor inconsistencies in the arresting officer's testimony."   Id. at 90.

On April 30, 2019, Petitioner filed the instant Petition, claiming: (1) insufficient evidence to support his conviction; (2) the violation of his Fourth Amendment rights caused by his cell phone being searched; (3) the Government engaged in outrageous conduct through entrapment; (4) his conviction violated double jeopardy; (5) the Government fostered and presented perjury; (6) there was a chain-of-custody violation and illegal handling of evidence; (7) ineffective assistance of counsel; and (8) ineffective assistance of appellate counsel.[3]   (See Petition

---

[3]  Petitioner raises most of his claims in his Petition; however, he raises additional claims in his supporting Support Memo.   Given his pro se status, the Court addresses all of Petitioner's claims made in both filings.

at 5-8; see also Support Memo, ECF No. 92, at 6-16.)  As part of his ineffective assistance of counsel claim, Petitioner alleges various failures by counsel, i.e.: (1) failure to call pertinent witnesses; (2) failure to object to inadmissible hearsay; (3) failure to raise a newly recognized Fourth Amendment right; (4) failure to present a personal-use defense; and (5) failure to present an entrapment defense. (See Petition at 7-8; Support Memo at 16-24.)  On June 6, 2019, the Government filed its Opposition (see ECF No. 96), to which Petitioner replied on August 26, 2019 (see ECF No. 98).

DISCUSSION

I.   <u>Legal Standard</u>

To obtain relief under Section 2255, a petitioner must demonstrate "a constitutional error, a lack of jurisdiction in the sentencing court, or an error of law or fact that constitutes a fundamental defect which inherently results in a complete miscarriage of justice." <u>Cuoco v. United States</u>, 208 F.3d 27, 30 (2d Cir. 2000) (internal quotation marks and citations omitted). A petitioner must also show that the error had "substantial and injurious effect" that caused "actual prejudice." <u>Brecht v. Abrahamson</u>, 507 U.S. 619, 637 (1993) (internal quotation marks and citations omitted); <u>Underwood v. United States</u>, 166 F.3d 84, 87 (2d Cir. 1999) (applying <u>Brecht</u> to a § 2255 motion).

To "obtain collateral relief a prisoner must clear a significantly higher hurdle than would exist on direct appeal." United States v. Frady, 456 U.S. 152, 166 (1982). A Court must exercise its discretion sparingly because Section 2255 applications "are in tension with society's strong interest in the finality of criminal convictions." Elize v. United States, No. 02-CV-1530, 2008 WL 4425286, at *5 (E.D.N.Y. Sept. 30, 2008) (internal quotation marks and citation omitted); see also Brecht, 507 U.S. at 633–34.

## II. Analysis

### A. Due Process Claims

#### 1. Insufficient Evidence Claim

Petitioner contends that the evidence at trial was insufficient to support his conviction of conspiracy to distribute heroin, thereby entitling him to habeas relief. He argues: (1) the text messages offered against him at trial were inadmissible hearsay; (2) the 1.5 grams of heroin was consistent only with personal use; and (3) the Court improperly instructed the jury on the elements of conspiracy. (See Petition at 5; Support Memo at 6–8.) The Court disagrees.

##### a. Text Messages Claim

Petitioner contends that the text messages admitted at trial between himself and Burke were inadmissible because there was no independent corroboration of his participation in the

10

conspiracy.  (See Support Memo at 7.)  Petitioner further argues that Burke's testimony was not sufficiently independent to prove a conspiracy; as such, the text messages between him and Burke should not have been admissible pursuant to Federal Rules of Evidence ("F.R.E.") 801(d)(2)(E) as statements made during the course, and in furtherance of, a conspiracy.

As to the text messages sent by Petitioner to Burke: The Court agrees with the Government's opposition argument (see Opp'n at 6-7) that those text messages were properly admitted as admissions by a party opponent, in accordance with F.R.E. 801(d)(2)(A).  Therefore, they do not present any hearsay concerns. See United States v. Thai, 29 F.3d 785, 812 (2d Cir. 1994); United States v. Reed, No. 10-CR-0826, 2012 WL 928259, at *2-3 (E.D.N.Y. Mar 19, 2012).

As to the text messages sent by Burke to Petitioner: Pursuant to F.R.E. 801(d)(2)(E), those messages were likewise properly admitted, because there was evidence of a conspiracy, of which both Burke and Petitioner were a part, and the text messages were exchanged in furtherance of the conspiracy.  See United States v. Al-Moayad, 545 F.3d 139, 173 (2d Cir. 2008) (instructing that to admit co-conspirator statements under F.R.E. 801(d)(2)(E), a court must find "(a) that there was a conspiracy, (b) that its members included the declarant and the party against whom the statement is offered, and (c) that the statement was made during

the course of and in furtherance of the conspiracy" (citing United States v. Alameh, 341 F.3d 167, 176 (2d Cir.2003)); see also Bourjaily v. United States, 483 U.S. 171, 179-80 (1987) (holding a co-conspirator's out-of-court statements may be used to establish the existence of the underlying conspiracy).  Through Burke's testimony, and the text messages, it was clearly established that: a conspiracy existed; both Burke and Petitioner were members thereof; and that Burke's texts to Petitioner were made during the course of and in furtherance of the conspiracy, especially as Burke testified she received heroin from Petitioner for her own personal use and to distribute to others and that Petitioner was aware that the heroin was being redistributed to other individuals.  Hence, the text messages sent by Burke to Petitioner clearly fell under F.R.E. 801(d)(2)(E), were not hearsay, and were admissible.

In sum, Petitioner's text message claim is meritless.

b. Personal-Use Claim

Petitioner asserts that because the heroin recovered after his arrest was a small amount for personal use only, his conviction was based on evidence insufficient to prove beyond a reasonable doubt that he intended to distribute heroin.  (See Petition at 5.)  Essentially, his personal-use claim is a sufficiency challenge.

12

A defendant raising a sufficiency challenge bears a heavy burden because a reviewing court must consider the evidence "in the light most favorable to the prosecution" and uphold the conviction if "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979); accord United States v. Jones, 531 F.3d 163, 168 (2d Cir. 2008).

Here, there was ample evidence demonstrating Petitioner's intent to distribute. Text messages were introduced at trial demonstrating that Petitioner engaged in heroin transactions. Burke also testified regarding their conspiracy to distribute heroin and stated that Petitioner sold her heroin on numerous occasions. Further, there were the text messages that were exchanged between Petitioner and Borgia – who was acting as Cooleen and using Cooleen's cell phone – on the night of Petitioner's arrest, in which Borgia (acting as Cooleen) requested to purchase heroin from Petitioner at a specific location, together with Petitioner arriving at that agreed-upon location for said sale. Moreover, the heroin recovered from Petitioner after his arrest was packaged in the same manner as the heroin sold to Burke, namely glassines and foil. Hence, viewed in the light most favorable to the prosecution, the evidence amply demonstrated that the recovered heroin was intended for distribution. As such, Petitioner's personal-use claim fails.

13

c. Improper Jury Instruction Claim

Petitioner asserts that the Court failed to properly instruct the jury regarding the crime of conspiracy pursuant to 21 U.S.C. § 846. Section 846 states that "[a]ny person who attempts or conspires to commit any offense defined in this subchapter shall be subject to the same penalties as those prescribed for the offense, the commission of which was the object of the attempt or conspiracy." Thus, it requires the Government to establish: (1) that there was a conspiracy; and (2) the object of the conspiracy was the distribution of a controlled substance. See id.

Relying upon United States v. Monaco, 194 F.3d 381 (2d Cir. 1991), Petitioner argues that the Government was required to prove an overt act in furtherance of the conspiracy. (See Support Memo at 6-7.) However, he later acknowledges that 21 U.S.C. § 846 does not require such proof. (See Reply, at 1-3.) In any event, Petitioner continues to argue that the Court failed to present to the jury independent evidence of the existence of a conspiracy between himself and Burke. (See id. at 2.) His position is unpersuasive as it has long been established that the uncorroborated testimony of an accomplice in a conspiracy is sufficient to convict a defendant for conspiracy to violate federal narcotics laws. See United States v. Agueci, 310 F.2d 817, 833 (2d Cir. 1962).

14

Here, the Court charged the jury on all required elements of the offenses against Petitioner. (Tr. 1270:14-1284:22.) Moreover, while Burke's uncorroborated testimony was sufficient, the Court also charged the jury to scrutinize Burke's testimony with caution and great care (Tr. 1263:24-1264:21), as is the practice in the Second Circuit in cases where there is uncorroborated accomplice testimony. See Agueci, 310 F.2d at 833. Thus, Petitioner's improper-jury-instruction claim carries no weight and is rejected.

2. Fourth Amendment Claim

Reasserting his argument advanced in support of his federal Suppression Motion, here Petitioner argues that his Fourth Amendment right to be free from unreasonable search and seizure was violated when Borgia purportedly searched his cell phone prior to obtaining a warrant. (See Support Memo at 9-12.) While Petitioner does not cite to Riley v. California, 573 U.S. 373 (2014), in support of the instant claim, he essentially makes a Riley argument with respect to his privacy interests in his cell phone.[4] Thus, and notwithstanding that in his Fourth Amendment ineffectiveness claim, Petitioner specifically cites to Riley, the Court addresses Petitioner's Riley argument here. In Riley v.

---

[4] In his federal Suppression Motion, Petitioner argued that his cell phone was unlawfully searched in violation of Riley v. California, 573 U.S. 373 (2014).

California, the Supreme Court held that the search-incident-to-lawful-arrest exception to the warrant requirement does not extend to cell phones and that officers must generally secure a warrant before conducting searches of data on cell phones.  See 573 U.S. at 386.

Here, after Petitioner's suppression hearing, this Court found that there was no Riley violation even if Borgia searched Petitioner's cell phone prior to obtaining a warrant because the factual basis for the search warrant was the same as to establish probable cause; as such, the Court denied Petitioner's Suppression Motion in accordance with the independent source doctrine.  (Supp. Hr'g Tr. 47:24-48:8.)

Then, following his conviction, Petitioner sought a new trial arguing that the data from his cell phone should have been suppressed since Borgia perjured himself when testifying in both the state and federal proceedings, especially as to the description of Petitioner given to Borgia by Cooleen's family.  (See Rule 33 Motion at 4.)  Petitioner's Rule 33 Motion was denied; this Court found that "[e]ven if this was perjurious from the very beginning, the fact that there were responses from [Petitioner]'s phone in response to those texts that were made by Detective Borgia, clearly sets out the probable cause here.  The lack of a perfect description doesn't cause this Court to think that the jury would have come in with any different result."  (Sept. 23, 2016 Tr.

12:25-13:6.)  On appeal, the Second Circuit rejected Petitioner's contention that this Court erred in denying his Rule 33 Motion, holding the finding of probable cause was correct, regardless of minor inconsistencies in Borgia's testimony.  <u>See</u> <u>Santana</u>, 717 F. App'x at 90.[5]

Ｔhe "so-called mandate rule bars re-litigation of issues already decided on direct appeal." <u>Yick Man Mui v. United States</u>, 614 F.3d 50, 53 (2010) (citing <u>Burrell v. United States</u>, 467 U.S. 160, 165 (2d Cir. 2006)).  Because Petitioner renews the same arguments here that he already made throughout his criminal proceedings, and the finding of probable cause to search Petitioner's cell phone was affirmed by the Second Circuit, the Court finds no reason to disturb that finding and grant Petitioner's request for habeas relief on Fourth Amendment grounds.  Accordingly, this claim is rejected.

3. <u>Entrapment Claim</u>

Petitioner also asserts that he is entitled to habeas relief on the grounds that he was the subject of entrapment by the Government.  (<u>See</u> Support Memo at 13-15.)  Petitioner did not raise such a defense at trial.  His entrapment claim is denied here.

---

[5]   The Circuit Court also affirmed this Court's denial of Petitioner's Suppression Motion.  <u>See</u> <u>Santana</u>, 717 F. App'x at 89-90.

To successfully assert an entrapment defense, a defendant must demonstrate, by a preponderance of the evidence, "(1) government inducement of the crime, and (2) lack of predisposition on the defendant's part." United States v. Bala, 236 F.3d 87, 94 (2d Cir. 2000) (quoting United States v. Salerno, 66 F.3d 544, 547 (2d Cir. 1995)). "A defendant is predisposed to commit a crime if he is 'ready and willing without persuasion' to commit the crime charged and 'awaiting any propitious opportunity' to do so." Salerno, 66 F.3d at 547 (quoting United States v. Harvey, 991 F.2d 981, 992 (2d Cir. 1993)). Predisposition may be shown by evidence of "(1) an existing course of criminal conduct similar to the crime for which [the defendant] is charged, (2) an already formed design on the part of the accused to commit the crime for which he is charged, or (3) a willingness to commit the crime for which he is charged as evidenced by the accused's ready response to the inducement." Id. at 548 (quoting United States v. Valencia, 645 F.2d 1158, 1167 (2d Cir. 1980)).

The case record demonstrates Petitioner's willingness to sell heroin to Borgia, who he believed to be Cooleen. Additionally, text messages exchanged between Petitioner and co-conspirator Poncho revealed that Petitioner had previously sold heroin to Cooleen. At trial, other evidence, including Burke's testimony and Petitioner's text messages, established Petitioner as a heroin dealer. Because this, and other evidence, demonstrated

18

Petitioner's willingness to commit the crime, Petitioner is unable to demonstrate that he was entrapped by the Government.  As such, Petitioner's entrapment claim fails.

####    4. Double Jeopardy Claim

Petitioner claims that his conviction constitutes a violation of double jeopardy warranting the granting of habeas relief.  (See Petition at 6.)  Although Petitioner was arrested by New York State authorities and originally prosecuted in state court in Nassau County, he was never tried; moreover, following his federal indictment, the state matter against Petitioner was dismissed.   Therefore, Petitioner's double jeopardy claim is unsustainable.

The Double Jeopardy Clause provides that no "person [shall] be subject for the same offence to be twice put in jeopardy of life or limb."  U.S. CONST. amend. V.  However, pursuant to the "dual sovereign" doctrine, the state and federal government are separate sovereigns, and may each prosecute crimes over which they have jurisdiction.  See Puerto Rico v. Sanchez Valle, 579 U.S. 59, 68 (2016) ("If two entities derive their power to punish from wholly independent sources . . . , then they may bring successive prosecutions."); see also United States v. Douglas, 336 F. App'x 11, 14 (2d Cir. 2009) ("Pursuant to the 'dual sovereign' doctrine, neither double jeopardy nor collateral estoppel precluded the federal government from bringing charges based on the same events

that inspired the state law charges for which [the defendant] was previously tried and acquitted.").

Prior to this case, after his arrest on May 12, 2014, Petitioner was charged in Nassau County with possession and sale of heroin. However, after Petitioner was charged with conspiracy to distribute heroin and attempted distribution of heroin in a federal superseding indictment filed on October 14, 2015, his state case in Nassau County was dismissed in January 2016. While the state court conducted a suppression hearing, Petitioner was never actually tried in state court. Yet, even if Petitioner had been tried, under the dual sovereign doctrine, his federal prosecution would not have violated double jeopardy. Accordingly, Petitioner's double jeopardy claim fails.

5. <u>Perjury Claim</u>

Petitioner argues that the Government presented perjured testimony through Borgia, thereby entitling him to habeas relief. (<u>See</u> Petition at 6.) Petitioner's claim is barred by the mandate rule and is meritless.

Petitioner previously asserted Borgia's purported perjury as the factual basis supporting his Rule 33 Motion and his direct appeal. This Court rejected Petitioner's perjury argument and the Circuit Court affirmed that rejection. <u>See</u> <u>Santana</u>, 717 F. App'x at 90 ("Considering that totality of the circumstances, the facts provide probable cause to arrest, regardless of whether

there were minor inconsistencies in the arresting officer's [i.e., Borgia'] testimony."). Hence, Petitioner's perjury claim is barred by the mandate rule. See Yick Man Mui, 614 F.3d at 53.

6. Chain of Custody Claim

Petitioner claims that he is entitled to habeas relief due to a "violation of the chain of custody and illegal handling [of] evidence." (Petition at 6.) Petitioner does not elaborate further[6] and, even affording Petitioner a liberal interpretation of his claims as required in a pro se petition, his claim does not support grounds for relief.

The two pieces of physical evidence offered against Petitioner were his cell phone and the heroin recovered from his underwear during his arrest. Through the testimony of Borgia and others, a full chain of custody was established. However, even if Petitioner's conclusory allegation that there was a break in the chain of custody, such a deficiency would "not bear upon the admissibility of evidence, only the weight of the evidence." United States v. Morrison, 153 F.3d 34, 57 (2d Cir. 1998). Accordingly, even if Petitioner were able to demonstrate that there was an error with regards to the chain of custody of either the cell phone or the heroin, that deficiency would have been unlikely to change the outcome of his trial. See United States v. Garcia,

---

[6] Nor does Petitioner articulate in his Reply why the chain of custody was violated or what evidence was illegally handled.

57 F. App'x 486, 489 (2d Cir. 2003) (finding where information only provides "ammunition for impeaching a prosecution witness," rather than exculpating a defendant, it is unlikely the change the outcome of a proceeding).  As such, Petitioner's conclusory claim that there was a violation of the chain of custody is unavailing.

B. Ineffective Assistance of Counsel

For Petitioner to prevail on his ineffective assistance of counsel claims, he must "(1) demonstrate that his counsel's performance 'fell below an objective standard of reasonableness' in light of 'prevailing professional norms,' and (2) 'affirmatively prove prejudice' arising from counsel's allegedly deficient representation." United States v. Cohen, 427 F.3d 164, 167 (2d Cir. 2005) (quoting Strickland v. Washington, 466 U.S. 668, 688, 693 (1984)).  When considering counsel's alleged errors, the Court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."  Strickland, 466 U.S. at 689.  If a petitioner is able to establish an error of constitutional magnitude, he must next establish that he was prejudiced by counsel's performance, meaning that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  Strickland, 466 U.S. at 694.

1. <u>Failure to Call Witnesses Claim</u>

Petitioner claims that defense counsel failed to call pertinent witnesses at his suppression hearing and trial. (<u>See</u> Petition at 7; Support Memo at 16-17.) For the reasons that follow, this claim fails.

"[W]hether to call any witnesses on behalf of the defendant, and if so which witnesses to call, is a tactical decision of the sort engaged in by defense attorneys in almost every trial." <u>United States v. Nersesian</u>, 824 F.2d 1294, 1321 (2d Cir. 1987), <u>cert. denied</u>, 484 U.S. 958 (1987). Such decisions "if reasonably made, will not constitute a basis for an ineffective assistance claim." <u>Id.</u>; <u>see also</u> <u>United States v. Eyman</u>, 313 F.3d 741, 743 (2d Cir. 2002) ("A failure to call a witness for tactical reasons of trial strategy does not satisfy the standard for ineffective assistance of counsel."), <u>cert. denied</u>, 538 U.S. 1021 (2003). "Moreover, a petitioner does not show that he was prejudiced by trial counsel's alleged deficient performance merely by asserting that certain witnesses might have supplied relevant testimony; rather, he must state exactly what testimony they would have supplied and how such testimony would have changed the result." <u>Carr v. Senkowski</u>, No. 01-CV-0689, 2007 WL 3124624, at *20 (W.D.N.Y. Oct. 23, 2007). Petitioner must also show that the proffered witness would have actually testified at trial. <u>See,</u> <u>e.g.</u>, <u>id.</u>, 2007 WL 3124624, at *22. "Courts have viewed claims of

23

ineffective assistance of counsel skeptically when the only evidence of the import of a missing witness' testimony is from the [petitioner]." Croney v. Scully, No. 86-CV-4335, 1988 WL 69766, at *2 (E.D.N.Y. June 13, 1988) (cleaned up).

Regarding Frederick Curry ("Curry"): Petitioner states that he expressly requested that trial counsel call Curry as a witness at the suppression hearing and/or trial. Curry drove Petitioner to the location where Petitioner was alleged to be going to consummate a heroin sale. He was arrested and charged in Nassau County as Petitioner's co-defendant, although Curry was not charged federally. (See Support Memo at 16.) Petitioner proffers that Curry's testimony would have: (1) "substantiated the relationship between petitioner and Kimberly Cooleen"; (2) "verified what petitioner was doing at the time Det. Borgia sent the initial text message from the deceased phone"; and (3) "confirm[ed] which text messages on petitioner phone was [sic] sent by him." (Id. at 17.) Petitioner provided a declaration from Curry in support of his Petition. (See Curry Decl., ECF No. 93, at ECF p.8.)

Petitioner cannot demonstrate that counsel's failure to call Curry constituted deficient performance. First, Petitioner fails to articulate that Curry would have been willing to testify. Indeed, what Petitioner proffers as Curry's expected testimony would likely have incriminated Curry. Second, in his affirmation,

Curry largely repeats Petitioner's testimony at trial; he does not actually state that he exchanged text messages with Cooleen's phone or with Burke.  (Curry Decl.)  Rather, Curry avers to inadmissible hearsay statements that Petitioner was getting high prior to his arrest; Petitioner testified to the same at trial.  Under this scenario, Petitioner cannot show deficient performance by counsel for failure to call a witness who was unlikely to testify for risk of incriminating himself and whose testimony was largely inadmissible.  Further, Petitioner cannot demonstrate that, but for counsel's failure to call Curry as a witness, the outcome would have been different.  Petitioner testified on his own behalf that the heroin recovered on him was for personal use; therefore, through his own testimony, he was able to advance that defense. Curry's purported additional testimony in that regard would largely have been inadmissible hearsay.  Therefore, Petitioner is unable to demonstrate prejudice by the failure of his counsel to call Curry as a witness.

Regarding Christine Cooleen ("Christine"):  Petitioner further states that he also expressly requested that trial counsel call Christine as a witness at the suppression hearing.  While counsel did not call Christine to testify at the suppression hearing, she was called to testify as a defense witness at Petitioner's trial.  Petitioner contends that Christine would have disputed Borgia's testimony that she provided him with a physical

25

description of Petitioner. (See Support Memo at 17.) While Christine's trial testimony was inconsistent with parts of Borgia's testimony, she nonetheless corroborated that she provided Borgia with several contacts in her sister's phone that she knew to be heroin dealers. (Tr. 1026:25-1027:12.) Based on that information, Borgia contacted Petitioner to arrange a heroin sale.

Even assuming, arguendo, that counsel's performance was deficient for failing to call Christine at the suppression hearing, Petitioner is unable to demonstrate prejudice. Following trial, inconsistencies between Christine's and Borgia's testimony were raised in Petitioner's Rule 33 Motion and on direct appeal to the Second Circuit. As stated supra, both this Court and the Second Circuit found that, despite some inconsistencies, Petitioner's arrest was supported by probable cause. Thus, Petitioner is unable to demonstrate that had Christine testified at the suppression hearing, the outcome would have been different; hence, prejudice is not shown.

Accordingly, the Court rejects as meritless Petitioner's claim that counsel's failure to call these witnesses rendered counsel's assistance to be ineffective.

### 2. Failure to Object Claim

Petitioner also asserts that counsel was ineffective for failing to object to inadmissible hearsay. In support of this theory, he relies upon his argument that the text messages

26

exchanged between himself and Burke were inadmissible and did not fall under F.R.E. 801(2)(d)(E).  His argument is made in vain as it is well-settled under <u>Strickland</u> that "the failure to include a meritless argument does not fall outside the wide range of professionally competent assistance to which Petitioner [i]s entitled."  <u>Aparicio v. Artuz</u>, 269 F.3d 78, 99 (2d Cir.2001). Indeed, "[t]he failure of a lawyer to invoke meritless objections cannot constitute constitutionally deficient performance."  <u>Hicks v. Ercole</u>, No. 09-CV-2531, 2015 WL 1266800, at *23 (S.D.N.Y. Mar. 18, 2015) (citing <u>United States v. Regalado</u>, 518 F.3d 143, 150 n.3 (2d Cir. 2008)); <u>see also</u> <u>Johnson v. Rivera</u>, No. 07-CV-0334, 2010 WL 1257923, at *9 (N.D.N.Y. Mar. 25, 2010) ("[C]ounsel [does] not render ineffective assistance by failing to make [an objection that would have been overruled as baseless]." (citing <u>United States v. DiPaolo</u>, 804 F.2d 225, 234 (2d Cir.1986)).  Because, as explained <u>supra</u>, the text messages exchanged between Petitioner and Burke were not hearsay pursuant to F.R.E. 801(d)(2)(A) and 801(d)(2)(E), Petitioner is unable to demonstrate that defense counsel's failure to objections regarding them constituted deficient performance.  In turn, Petitioner's failure-to-object claim carries no weight.

### 3. Failure to Raise Fourth Amendment Claim

Petitioner argues that he is entitled to relief on the grounds that counsel failed to argue his Fourth Amendment rights

were violated pursuant to Riley v. California, 573 U.S. 373 (2014).
(See Pet. at 7; Support Memo at 20-22.)  That claim is belied by
the record.

In Petitioner's Suppression Motion, arguing that
Petitioner's privacy interest in his cell phone under the Fourth
Amendment was violated, counsel specifically advanced this
argument relying upon Riley. (See Supp. Motion, ECF No. 24, at 5-
6.)  In the face of this reality, Petitioner cannot credibly
advance his complaint of deficient performance by counsel for
counsel's alleged failure to argue that law enforcement violated
his Fourth Amendment rights under Riley.

Even if that were not so, Petitioner is unable to
establish prejudice.  First, his Fourth Amendment claims were
litigated extensively.  Second, while Petitioner's cell phone was
searched pursuant to a warrant, this Court also found that there
was independent probable cause to search said cell phone.  Given
this record, Petitioner is unable to demonstrate that but for
counsel's failure to raise an objection pursuant to Riley, the
outcome of his case would have been different.

Hence, Petitioner's claim that counsel was ineffective
for failing to raise a Fourth Amendment claim is to no avail.

4. Failure to Raise Entrapment Claim

Petitioner contends that, despite Petitioner's requests
of counsel to raise an entrapment defense at trial, counsel failed

to do so, rendering counsel's assistance ineffective.  However, as discussed <u>supra</u>, Petitioner's entrapment defense would likely have failed as there was compelling evidence establishing Petitioner's willingness to commit the crime.  <u>See, e.g.</u>, <u>Bala</u>, 236 F.3d at 94 (instructing that to successfully present an entrapment defense, a defendant must demonstrate, by a preponderance of the evidence, "(1) government inducement of the crime, and (2) lack of predisposition on the defendant's part").  Given the record, Petitioner cannot demonstrate that counsel's performance was deficient for failing to raise the entrapment defense.  <u>See</u> <u>Jimenez v. United States</u>, No. 10-CR-0316, 2015 WL 5098075, at *6-7 (S.D.N.Y. Aug. 31, 2015) (denying ineffective assistance claim for failure to raise entrapment defense when such defense was not supported by the evidence and was unlikely to succeed at trial); <u>see also</u> <u>Avendano v. United States</u>, No. 02-CR-1059, 2009 WL 137035, at *6 (S.D.N.Y. Jan. 21, 2009) (denying ineffective assistance claim for failure to raise entrapment defense when there was "no obvious weakness in the Government's evidence that would undermine an inference that Petitioner was predisposed to enter into the agreements for which he was convicted").

Furthermore, the entrapment defense is "risky and rarely successful" because it "in effect admits that the defendant engaged in criminal conduct, and attempts to explain away the commission of criminal acts," and generally "dilute[s] the force of a denial

of wrongdoing." <u>Jimenez</u>, 2015 WL 5098075, at *6-7 ("Even if, as [defendant] contends, he had to be convinced to participate in the scheme through others' persistent requests, it was reasonable for [defendant's] counsel to conclude that [defendant] had shown 'a willingness to commit the crime' as demonstrated by a 'ready response to the inducement.'" (quoting <u>Salerno</u>, 66 F.3d at 548)). Therefore, it was not unreasonable for trial counsel to pursue a different strategy, and, as such, Petitioner is unable to demonstrate deficient performance.

Accordingly, Petitioner's claim that counsel was ineffective for failing to raise an entrapment defense is without merit.

### 5. <u>Failure to Present Personal-Use Defense Claim</u>

Petitioner asserts that counsel failed to argue that the heroin recovered was solely for personal use. (Petition at 25-27.) Petitioner's claim is baseless as it is refuted by the trial record.

At trial, Petitioner testified in his own defense, stating that the heroin recovered after his arrest was for personal use and that prior to his arrest he had been getting high. (Tr. 1071:22-1072:10, 1073:1-1073:23, 1075:24-1076:2.) Similarly, on summation trial counsel asserted that the heroin recovered was for Petitioner's personal use. (Tr. 1223:11-14 ("They weigh it seven months later. And what does he come back with? No matter how

much they want you to believe anything else, unfortunately it is personal weight, it's 1.3 grams.  It's nothing.").)  Thus, where trial counsel did elicit Petitioner's testimony that the heroin recovered was for personal use and reiterated that defense in his summation, Petitioner cannot demonstrate counsel's deficient performance for failing to present a personal-use defense; therefore, this claim is denied.

> 6. <u>Ineffective Assistance of Appellate Counsel Claim</u>

Petitioner also contends that appellate counsel was ineffective for failing to challenge the validity of the search warrant.  (See Support Memo at 25.)  Again, Petitioner's claim fails.

As with trial counsel, the <u>Strickland</u> standard applies to claims of ineffective assistance of appellate counsel.  <u>See</u> <u>Smith v. Murray</u>, 477 U.S. 527, 536, (1986); <u>Claudio v. Scully</u>, 982 F.2d 798, 803 (2d Cir. 1992) ("Although <u>Strickland</u> addressed the constitutional standard for ineffective assistance of counsel in the trial counsel context, our Circuit has also adopted the <u>Strickland</u> two-prong test in assessing the effectiveness of appellate counsel.").  "[I]t is not sufficient for the habeas petitioner to show merely that counsel omitted a nonfrivolous argument, for counsel does not have a duty to advance every nonfrivolous argument that could be made." <u>Mayo v. Henderson</u>, 13 F.3d 528, 533 (2d Cir. 1994) (citing <u>Jones v. Barnes</u>, 463 U.S.

745, 754 (1983)).   However, a petitioner may demonstrate ineffective assistance by demonstrating that "[appellate] counsel omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker." Id. at 533.

Here, Petitioner argues that appellate counsel refused to contest the validity of the search warrant in favor of arguing that the Court erred in denying his Suppression Motion and his Rule 33 Motion because appellate counsel felt that contesting the Court's decisions would yield a better result. (See Support Memo at 25.) However, appellate counsel is not required to make every possible argument.   Moreover, the issues appellate counsel ultimately pursued were not clearly and significantly weaker than contesting the search warrant's validity.   Upon the record presented, Plaintiff has not shown appellate counsel's performance to be deficient.

Even assuming, arguendo, that appellate counsel's performance was deficient, Petitioner cannot demonstrate prejudice.   At Petitioner's suppression hearing, the Court determined there was uncontroverted evidence that, under the independent source rule, there was probable cause to search Petitioner's cell phone based on the text messages observed by Borgia at the time of Petitioner's arrest. (Supp. Hr'g Tr. 51:10-52:21.)   Thus, appellate counsel's decision to forgo challenging the validity of the search warrant did not prejudice Petitioner

32

since there is not a reasonable probability that but for this alleged error, the results of Petitioner's trial would be different.

In the absence of demonstrating either deficient performance or prejudice caused by appellate counsel, Petitioner's claim of ineffective assistance of appellate counsel fails.

CONCLUSION

Accordingly, **IT IS HEREBY ORDERED** that Petitioner's Petition (ECF No. 91) is **DENIED** in its entirety;

**IT IS FURTHER ORDERED** that, because there can be no debate among reasonable jurists that Petitioner is not entitled to habeas relief, the Court does not issue a Certificate of Appealability, see 28 U.S.C. § 2253(c); see also Middleton v. Att'ys Gen., 396 F.3d 207, 209 (2d Cir. 2005);

**IT IS FURTHER ORDERED** that the Court certifies any appeal of this Order would not be taken in good faith, and thus Petitioner is denied in forma pauperis status for the purposes of any appeal. See Coppedge v. United States, 369 U.S. 438, 444-45 (1962); and

[Remainder of Page Intentionally Left Blank.]

**IT IS FURTHER ORDERED** that the Clerk of the Court: (1) mark CLOSED the corresponding civil case, Case No. 19-CV-6919; and (2) mail a copy of this Memorandum and Order to the Petitioner at his address of record, including the notation "LEGAL MAIL" on the mailing envelope.

**SO ORDERED.**

/s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

Dated:     May 13, 2022
           Central Islip, New York

34